DENNIS JACOBS, *Circuit Judge*, joined by JOSÉ A. CABRANES, REENA RAGGI, and CHRISTOPHER F. DRONEY, *Circuit Judges*, dissenting from the denial of rehearing in banc:

The United States has ordered Microsoft to provide copies of certain emails pursuant to the Stored Communications Act. A magistrate judge found probable cause to believe those emails contain evidence of a crime. (The instrument functions as a subpoena though the Act calls it a warrant.) A panel of this Court directed the district court to quash the warrant as an unlawful extraterritorial application of the Act. Now, in a vote split four–four, we decline to rehear the case in banc. I respectfully dissent from the denial.

I subscribe to the dissents of Judge Cabranes, Judge Raggi, and Judge Droney, which set out in detail the doctrinal basis for the right result in this appeal. I write separately to describe an approach that is perhaps more reductionist.

I

As all seem to agree, and as the government concedes, the Act lacks extraterritorial reach. However, no extraterritorial reach is needed to require delivery in the United States of the information sought, which is easily accessible

1

in the United States at a computer terminal.  The majority nevertheless
undertakes to determine whether this case presents a forbidden extraterritorial
application by first "look[ing] to the 'territorial events or relationships' that are
the 'focus' of the relevant statutory provision."  Majority Op., 829 F.3d at 216
(quoting *Mastafa v. Chevron Corp.*, 770 F.3d 170, 183 (2d Cir. 2014)).  Oddly, the
majority then holds that the relevant "territorial" "focus" is user privacy.  But
privacy, which is a value or a state of mind, lacks location, let alone nationality.[1]
Territorially, it is nowhere.  Important as privacy is, it is in any event protected
by the requirement of probable cause; so a statutory focus on privacy gets us no
closer to knowing whether the warrant in question is enforceable.

Extraterritoriality need not be fussed over when the information sought is
already within the grasp of a domestic entity served with a warrant.  The
warrant in this case can reach what it seeks because the warrant was served on
Microsoft, and Microsoft has access to the information sought.  It need only
touch some keys in Redmond, Washington.  If I can access my emails from my

---

[1] As Judge Lynch wrote in his panel concurrence, privacy "is an abstract concept with
no obvious territorial locus," and the majority's conclusion therefore "does not really
help us to distinguish domestic applications of the statute from extraterritorial ones."
Concurring Op., 829 F.3d at 230 n.7.

phone, then in an important sense my emails are in my pocket, notwithstanding where my provider keeps its servers.

The majority opinion relies on an implicit analogy to paper documents: "items" and "material" and "content" that are "located" and "stored" and that the government seeks to "collect" and "import." But electronic data are not stored on disks in the way that books are stored on shelves or files in cabinets. Electronic "documents" are literally intangible: when we say they are stored on a disk, we mean they are encoded on it as a pattern. At stake in this case is not whether Microsoft can be compelled to import and deliver a disk (or anything else), but whether Microsoft can be compelled to deliver information that is encoded on a disk in a server and that Microsoft can read.

The panel's approach is unmanageable, and increasingly antiquated. As explained in an article Judge Lynch cites in his concurrence (829 F.3d at 229): "[T]he very idea of online data being located in a particular physical 'place' is becoming rapidly outdated," because electronic "files [can] be fragmented and the underlying data located in many places around the world" such that the files "only exist in recognizable form when they are assembled remotely." Orin S. Kerr, *The Next Generation Communications Privacy Act*, 162 U. Pa. L. Rev. 373, 408

(2014).  The underlying data can be fragmented or recombined, copied or transferred, for convenience or maintenance or economy – or (not incidentally) to evade the police.  And all that can be done at the direction of the user or without the user's knowledge, and without a care for national boundaries, tariffs or postage.  Nothing moves but information.

To enforce the warrant, there is no practical alternative to relying upon access, and no need to seek an alternative.  We can conclude that warrants can reach what their recipients can deliver: if the recipient can access a thing here, then it can be delivered here; and if statutory and constitutional standards are met, it should not matter where the ones-and-zeroes are "stored."

Localizing the data in Ireland is not marginally more useful than thinking of Santa Claus as a denizen of the North Pole.  Problems arise if one over-thinks the problem, reifying the notional: Where in the world is a Bitcoin?  Where in my DVR are the images and voices?  Where are the snows of yesteryear?

II

The majority has found no indication that Congress considered in 1986 whether a warrant issued under the Act would reach data stored on servers outside the United States; and Judge Lynch's concurrence, having recognized the

4

flaws in the majority opinion, calls on Congress to modernize the statute.  I too would like to see Congress act, chiefly to consider certain ramifications, such as whether the United States might be vulnerable to reciprocal claims of access through local offices of American companies abroad.  But we are not in a position to punt when it comes to construing a statute that either does or does not allow execution of a warrant in a case that is before us now.  Holding, as the panel did, that the statute does not allow enforcement of this warrant is an interpretation of the statute, not a deferential bow to Congress.  So though it would best if Congress could form a consensus on the issue, that preference is not a principle of statutory construction.

Nor can it matter how we would order legislative priorities (this would seem to be a bit down the list), or how much we would welcome bipartisan consideration of a bill that has not been enacted.  Legislative proposals are myriad, and they fall as leaves.  Come what may, we are left for now with the law as it is.   The panel misconstrues it, and I would rehear the case in banc.